STATE OF CONNECTICUT *v.* PHILIP F. WIELER II
(15091)

PETERS, C. J., and BORDEN, BERDON, KATZ and F. X. HENNESSY, Js.

Argued May 25—decision released June 20, 1995

*Ira B. Grudberg*, with whom was *David A. Leff*, for the appellant (defendant).

*Jack W. Fischer*, assistant state's attorney, with whom, on the brief, were *John M. Bailey*, state's attorney, *Domenick Galluzzo*, deputy chief state's attorney, and *Michael Sullivan*, supervisory assistant state's attorney, for the appellee (state).

PER CURIAM. The only issue in this certified appeal is whether, for the purposes of the crime of larceny by embezzlement under General Statutes § 53a-119, the term "appropriation," as defined in General Statutes § 53a-118,[1] requires proof of an intent permanently to deprive the victims of their property. The defendant,

---

[1] General Statutes § 53a-119 provides in relevant part: "LARCENY DEFINED. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to: (1) Embezzlement. A person commits embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody."

General Statutes § 53a-118 provides in relevant part: "DEFINITIONS GENERALLY. (a) The following definitions are applicable to this part . . . (4) To 'appropriate' property of another to oneself or a third person means (A) to exercise control over it, or to aid a third person to exercise control over it, permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit, or (B) to dispose of the property for the benefit of oneself or a third person. . . ."

Philip F. Wieler II, was charged, in two informations, with twenty-three counts of larceny in the first degree in violation of General Statutes § 53a-122 (a) (2)[2] and two counts of larceny in the second degree in violation of General Statutes § 53a-123 (a) (2).[3] After a jury trial, he was convicted of all but one of the counts of larceny in the first degree. The Appellate Court affirmed the judgment of conviction. *State* v. *Wieler*, 35 Conn. App. 566, 645 A.2d 1032 (1994). We granted certification to review the defendant's claim that he lacked the criminal intent required for larceny by embezzlement.[4] We affirm the judgment of the Appellate Court.

The opinion of the Appellate Court recites the relevant facts that the jury reasonably could have found. "[T]he defendant, Philip F. Wieler II, was the president and sole stockholder of NW Group, Inc., a New Haven based company that provided property management services for various condominium associations throughout Connecticut. . . . From 1986 to 1989, NW Group, Inc., managed the properties of approximately fifty condominium associations, approximately fifteen of which were owned in whole or in part by the defendant. . . .

"During the period between June, 1986, and the end of 1989, properties in which the defendant had an inter-

---

[2] General Statutes § 53a-122 provides in relevant part: "LARCENY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ."

[3] General Statutes § 53a-123 provides in relevant part: "LARCENY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds five thousand dollars . . . ."

[4] We granted the defendant's petition for certification, limited to the following issue: "Does the crime of larceny by embezzlement require an intent to permanently deprive another of his property?" *State* v. *Wieler*, 231 Conn. 933, 649 A.2d 256 (1994).

est began to experience financial difficulties. These properties did not generate sufficient income to pay their bills in full. Despite this, the bills for the defendant's properties were paid . . . [by withdrawing] funds from the accounts of properties not owned by the defendant that had large balances. Checks drawn on the accounts of these associations to pay the bills of the defendant's properties were marked 'PRE' for 'prereimbursement' and were treated as loans. By 1989, the overdrafts were occurring as frequently as four times per week.

"The properties managed by NW Group, Inc., but not owned by the defendant, never authorized the defendant to withdraw moneys from their accounts other than to pay bills on their behalf. Nor had any of the properties ever authorized a loan to the defendant. In fact, the properties had no way of knowing about this prereimbursement procedure." Id., 568–71.

At trial, the state presented evidence that the defendant had personal knowledge of, and received personal benefits from, the improper diversion of funds by the NW Group, Inc. The sufficiency of that evidence is not at issue. The trial court precluded the defendant from presenting evidence regarding his intent to repay the moneys taken from the various condominium associations that he did not own. The trial court also refused to charge the jury that embezzlement requires proof of an intent permanently to deprive another person of his or her property. The validity of these evidentiary and instructional decisions of the trial court was the basis for the defendant's appeal to the Appellate Court and for his further appeal, upon our grant of certification, to this court.

On appeal, the Appellate Court undertook a close examination of the specific language of the statutes that

define the crime of larceny by embezzlement. See General Statutes §§ 53a-119 (1) and 53a-118 (a) (4) (B). The Appellate Court noted that, until 1969, the embezzlement statutes in this state did not require the state to prove that the accused intended permanently to deprive his victims of their property. That requirement was first added by the enactment of § 53a-118 (a) (4) (A) in 1969. As the Appellate Court went on to observe, however, "[t]he intent permanently to deprive . . . is only one of two alternative theories in the embezzlement statute. The other alternative requires disposal of the property without the intent permanently to deprive the victims of their property. See General Statutes § 53a-118 (a) (4) (B). This alternative is the theory on which the state pursued conviction." *State* v. *Wieler*, supra, 35 Conn. App. 578–79. In light of its painstaking analysis of the governing statutes, the Appellate Court concluded that the trial court had properly excluded evidence with respect to the defendant's intent to repay the moneys taken from the condominium associations that the NW Group, Inc., did not own. Id., 579. A fortiori, the trial court had properly refused the corresponding charge requested by the defendant. Id., 580.

After examining the record on appeal, and after considering the briefs and arguments of the parties, we conclude that the judgment of the Appellate Court must be affirmed. The issue on which we granted certification was properly resolved in the thoughtful and comprehensive opinion of the Appellate Court. It would serve no useful purpose for us to repeat the discussion therein contained. See *Reichert* v. *Sheridan*, 233 Conn. 251, 253, 658 A.2d 96 (1995); *Talton* v. *Warden*, 231 Conn. 274, 275–76, 648 A.2d 876 (1994); *State* v. *Leonard*, 210 Conn. 480, 481, 556 A.2d 611 (1989).

The judgment is affirmed.