STATE OF CONNECTICUT *v.* CHARLES MCCLENDON
(AC 15529)

O'Connell, Foti and Hennessy, Js.

Argued March 17—officially released July 15, 1997

*Elizabeth M. Inkster*, assistant public defender, with whom was *Joseph G. Bruckmann*, public defender, for the appellant (defendant).

*Christopher Godialis*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *John H. Malone*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Charles McClendon, was convicted after a jury trial of two counts of felony murder in violation of General Statutes § 53a-54c, attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (2) and (4), and two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), (2) and (4). On appeal,[1] the defendant claims that the

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

trial court improperly (1) denied his motions to suppress identification, (2) excluded the testimony of a defense expert on the subject of eyewitness identification, (3) suppressed a certain police report, (4) admitted evidence of other crimes and (5) concluded that the state presented sufficient evidence of the identity of the defendant as the perpetrator of the crimes for which he was found guilty. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 4:40 p.m. on August 11, 1987, Darlene Hale was at her desk at C & K Moving Company (C & K) at 211 Walnut Street in Hartford. A man came in and requested a job application. He was five feet six or seven inches tall and weighed between 150 and 165 pounds. He was black and had short dark hair, a moustache and a pockmarked face. He was wearing gold-rimmed tinted glasses and a blue shirt with the sleeves rolled up. She handed the man an application. At that time, Dennis Shortell, the owner of the company, asked Hale to place a telephone call. After she placed the call, a man came up behind her, put a silver and black gun to her head and demanded money. Hale noticed that the robber had the same rolled up blue shirt sleeves and voice as the man to whom she had given the application. As Hale emptied her wallet into the robber's bag, Grayland Cannon, another employee of the company, walked in. The robber demanded money from Cannon and, when Cannon told the robber that he did not have any, the robber shot him. The robber then went to Shortell's office, demanded money, shot Shortell and fled. Both Cannon and Shortell died of their wounds.

At around 4:45 p.m. the same day, from his residence in the vicinity of C & K, Hector Colon heard "three or four" gunshots and subsequently saw a black male "walking real fast . . . looking backwards." He was wearing a blue shirt with "no sleeves" and carrying a

paper bag under his arm. Around the same time, also in the vicinity of C & K, Stephen Tinker observed a man wearing gold-rimmed tinted glasses and a blue and white striped shirt. Shirley Lassiter also saw a man wearing a "blue short sleeve shirt" and walking fast. Both Tinker and Lassiter later identified the man as the defendant from an array of photographs and also identified him at trial.

On August 13, 1987, the police executed a search and seizure warrant on the defendant's residence at 18-20 Edgewood Street in Hartford. In the apartment, the police found a twenty-two caliber handgun with a silver cylinder and white plastic grips. James McDonald, a forensic firearms examiner, testified at trial that in his opinion "all three of those [bullets that killed Shortell and Canon and injured a victim in another uncharged robbery] were fired from [the gun found in the defendant's apartment] and no other revolver." On September 15, 1989, Hale viewed a lineup composed of six black males. She also heard the men speak. From the lineup and the voice sample, Hale identified the defendant as the gunman. The defendant was subsequently charged with and found guilty of the C & K robberies and murders. This appeal followed.

## I

The defendant first claims that the trial court improperly denied his motions to suppress Hale's identification of him on two grounds: (1) there was no probable cause to issue a search and seizure warrant to compel his placement in a lineup; and (2) the lineup was unnecessarily suggestive resulting in an unreliable identification.

The following additional facts are necessary for the resolution of this issue. In September, 1989, two years after the incident at the C & K office, the defendant was incarcerated on unrelated robbery charges. During

those two years, Hale was shown, on several occasions, arrays that included a photograph of the defendant, but she could not identify the defendant as the man in gold-rimmed tinted glasses who had asked for the job application. In 1989, Hale was contacted by Detective Ronald Faggaini, of the Hartford police who had recently taken over the investigation. Hale told him that she could not make a positive identification of the shooter without seeing the person wearing eyeglasses. She also told a state's attorney that she might be able to recognize the robber's voice if she heard it again. The police secured a search and seizure warrant authorizing the defendant to be placed in a lineup and to give a voice sample.[2] After viewing the lineup and listening to the voice samples, Hale positively identified the defendant as the robber.

A

The defendant argues that the warrant authorizing the lineup and voice sample violates article first, § 9, of the Connecticut constitution.[3] He claims that the lineup was not "clearly warranted by law" because the warrant failed to establish probable cause. The defendant avers that "[t]he 'nexus' required between the items to be seized [the defendant's person and voice sample] and the criminal behavior was clearly not established under the facts presented here." *State* v. *Acquin,* 177 Conn. 352, 355, 416 A.2d 1209 (1979). We disagree.

The affidavit accompanying the request for the warrant contained the following information. Hale gave a detailed description of the person to whom she had given an employment application minutes before the

---

[2] The defendant and the other men in the lineup were asked to say, "I have a gun, this is a holdup, give me your money."

[3] Article first, § 9, of the constitution of Connecticut provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

shootings and of the handgun he used. She further assisted the police in preparing a composite drawing of the perpetrator. This composite was shown to the victim of an unrelated robbery at Spillane's Service Station who stated that the person who had robbed her resembled the composite drawing. Another witness to the Spillane's Service Station robbery identified the defendant from an array of photographs as being the perpetrator. Hale was shown photograph arrays that included a picture of the defendant but was unable to identify the person to whom she gave the employment application and who held her at gunpoint. Hale stated that she could not make the identification without seeing the person wearing eyeglasses. Two years later, while talking to the Hartford county state's attorney, Hale stated that if she heard the same voice again she might be able to identify the speaker as the shooter. The affidavit concluded by stating that a lineup viewing and a voice sample of the defendant heard by Hale may produce a positive identification. This affidavit was presented to a judge of the Superior Court.[4] The court found that, based on the facts contained in the affidavit, probable cause existed for the transportation of the defendant from his place of incarceration for purposes of a lineup and voice sample.

"Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity; and (2)

---

[4] At the time the search and seizure warrant was presented to the court, there was no codified procedure to remove an incarcerated person from custody and place him in a lineup for an unrelated crime, other than a procedure "warranted by law." See State v. White, 229 Conn. 125, 147–56, 640 A.2d 572 (1994).

there is probable cause to believe that the items named will be found in the place to be searched." (Citations omitted; internal quotation marks omitted.) *State* v. *Barton*, 219 Conn. 529, 548, 594 A.2d 917 (1991).

"In determining whether the warrant was based upon probable cause, we may consider only the information that was actually before the issuing judge at the time he or she signed the warrant, and the reasonable inferences to be drawn therefrom. . . . We view that information, however, in the light most favorable to the issuing judge's determination of probable cause, and '[i]n a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the magistrate's determination.' " (Citation omitted.) *State* v. *Duntz*, 223 Conn. 207, 216, 613 A.2d 224 (1992).

In this case, we conclude that the affidavit presented a substantial factual basis to support the court's conclusion that probable cause for the lineup and the voice sample existed. The police officer affiants attested that Hale gave a detailed description of the person who requested the employment application and that she had the opportunity to see that person clearly. On the bases of Hale's description of the gunman and the identification of the composite as the defendant by another robbery victim, and justifying Hale's inability to identify the gunman from photograph arrays because the photographs did not show the potential perpetrators wearing eyeglasses, the issuing judge could reasonably have inferred that probable cause existed.

B

The defendant also claims that the identification procedure was unnecessarily suggestive and unreliable under the totality of circumstances. He argues that the lineup was invalid because Hale was shown several photograph arrays containing the defendant's photo-

graph over the prior two years and, therefore, the defendant was the only person in the lineup whom Hale had seen before. He further maintains that the identification was unreliable because at the time of the robbery, Hale was hysterical, and the identification did not take place until two years after the crime.

"A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure." (Internal quotation marks omitted.) *State* v. *Hinton*, 196 Conn. 289, 293, 493 A.2d 836 (1985). To succeed on the motion to suppress, "the defendant must prove (1) that the identification procedures were unnecessarily suggestive, and (2) that the resulting identification was not reliable in the totality of the circumstances." *State* v. *Perez*, 198 Conn. 68, 73, 502 A.2d 368 (1985); *State* v. *Parker*, 197 Conn. 595, 598, 500 A.2d 551 (1985); *State* v. *Hinton*, supra, 292–93.

We are not persuaded by the defendant's argument that the identification procedure was unnecessarily suggestive because he was the only person in the lineup whom Hale had seen before. "The recurrent use of a defendant's photograph in successive arrays . . . is not presumptively suggestive." *State* v. *Williamson*, 206 Conn. 685, 691, 539 A.2d 561 (1988). Although Hale was shown photographs of the defendant in arrays on several occasions, she had never identified the defendant from those arrays. Additionally, Hale maintained that she had closely observed the defendant when he requested an employment application and heard him speak several times. She could not, however, identify him without seeing a lineup composed of persons wearing glasses and without hearing his voice. The trial court, therefore, could reasonably conclude that the identification procedure was not unnecessarily suggestive.

The defendant next contends that, even if the procedure was not unnecessarily suggestive, the identification was unreliable under the totality of circumstances. "The constitutional test for reliability requires the trial court to consider 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.' *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Theriault,* [182 Conn. 366, 373–74, 438 A.2d 432 (1980)]." *State* v. *Hinton,* supra, 196 Conn. 295–96.

In this case, Hale had ample opportunity to see and to hear the robber. She had a high degree of attention and was face-to-face with the defendant, and her description of the perpetrator at the time of the incident was quite detailed. Hale also demonstrated certainty in identifying the defendant at the lineup. Furthermore, we cannot assume that the two year period between the identification and Hale's viewing of the defendant was so long as to render her identification unreliable. Under these circumstances, the trial court properly concluded that the identification procedure was not so suggestive and unreliable as to violate the defendant's right to due process.

## II

In the defendant's second claim, he argues that the trial court abused its discretion in excluding the testimony of Michael Leippe on the subject of eyewitness identification. The defendant contends that here, where the reliability of the memory of the eyewitness was critical, the testimony of Leippe, an expert on the subject of eyewitness recall, should have been allowed to

aid the jury in gauging the reliability of an identification. The trial court ruled that the testimony would serve only to confuse the jury and would not help it to consider the issues. The court also stated that "[t]he proffered testimony in the offer of proof is essentially general principles."

"The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The court's decision 'is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law. *Going* v. *Pagani*, 172 Conn. 29, 35, 372 A.2d 516 (1976).' . . . Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . Almost uniformly, state and federal courts have upheld the trial court's exercise of discretion to exclude [expert testimony on the reliability of eyewitness identifications]. . . . Such testimony has been excluded on the grounds that the reliability of eyewitness identification is within the knowledge of jurors and expert testimony generally would not assist them in determining the question. . . . Such testimony is also disfavored because, as one court has stated, 'it invades the province of the jury to determine what weight or effect it wishes to give to eyewitness testimony.' " (Citations omitted.) *State* v. *Kemp*, 199 Conn. 473, 476–77, 507 A.2d 1387 (1986).

Here, the trial court concluded that the proffered testimony was within the general knowledge of the jurors and that it would not aid them to resolve the issues at hand. Under the facts and circumstances of this case, the trial court did not abuse its discretion in excluding Leippe's testimony.

## III

### A

In the defendant's third claim, he argues that the state's tardy disclosure of an exculpatory police report requires a new probable cause hearing and trial. The state contends that the defendant's argument should be rejected because no evidence was suppressed and the evidence claimed to be suppressed would not have affected the outcome of the probable cause hearing or the trial. We agree with the state.

The report was prepared by Faggaini, who died one year after the probable cause hearing and two years before the trial. In the report, he wrote: "Ms. Hale stated since she didn't see the culprit's face at the time of the robbery/murder, she wouldn't be able to make [an] identification. Ms. Hale stated it was [an] assumption on her part that the black male who entered minutes before was the one responsible. . . . Ms. Hale stated she is really unsure if she could identify the male who she gave [an] application to." The trial court found the report to be exculpatory but ruled the prejudice to be minimal and gave the defense an opportunity to bring Hale back to court for further examination. Hale returned for questioning and denied having told Faggaini that she could not identify the person who committed the C & K robbery.

"This court has long held, on the basis of *Brady* v. *Maryland*, [373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)], and its progeny, that [s]ince the adversarial probable cause hearing [mandated by article first, § 8, of the Connecticut constitution as amended] . . . is an essential part of a defendant's criminal prosecution, the constitutional obligation to disclose exculpatory material attaches at that time. . . . [I]n *State* v. *Shannon*, 212 Conn. 387, 406, 563 A.2d 646 [cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512] (1989), we held

that in order for this court to consider claims of nondisclosure of exculpatory material at a probable cause hearing required by our state constitution, the defendant must demonstrate: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that it was material. *State* v. *Milner*, 206 Conn. 512, 539, 539 A.2d 80 (1988). We further held, in *Shannon*, that the materiality of such exculpatory evidence is to be determined by utilizing the test set forth in *United States* v. *Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). *State* v. *Shannon*, supra, 406–407. Under the *Bagley* test, nondisclosed exculpatory evidence will be considered material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . *State* v. *McPhail*, 213 Conn. 161, 166–67, 567 A.2d 812 (1989)." (Citations omitted; internal quotation marks omitted.) *State* v. *White*, 229 Conn. 125, 134–35, 640 A.2d 572 (1994).

It is clear from the facts in this case that Hale's statement contained in the Faggaini report was not made available to the defendant until after the probable cause hearing, but was available to the defendant before trial.[5] It is also clear that Hale's statement was favorable to the defense. The critical issue, therefore, is to determine if the nondisclosed evidence was material. We conclude that the evidence was not material because we are not persuaded that the outcome of the probable cause hearing would have been different had the Faggaini report been disclosed.

---

[5] The record discloses that on November 19, 1992, during a hearing on a motion to suppress Hale's identification of the defendant, the Faggaini report was referred to by the defendant when questioning Hale. It is probable, therefore, that the defendant had the report before the trial began.

The facts in the Faggaini report are consistent with the facts set forth in the affidavit presented to the court in the search and seizure warrant. The affidavit stated in relevant part: "On May 18, 1989, Hartford Police Department Detective Ronald Faggaini spoke to Darlene Hale re identification. She informed him that she is really unsure if she could identify the male she gave the employment application to on August 11, 1987, before the murder occurred." The defendant, therefore, already had information that would have allowed him to question Hale at the probable cause hearing on the reported conflict between her identification of the defendant in court and her inability to identify the defendant in her statements to the police. Furthermore, Hale had consistently stated before and during the trial that she had not seen the robber's face during the robbery and shootings, but recognized the color of the shirt he was wearing and the way in which his shirt sleeve was rolled up as being the same as the man who requested a job application minutes before the robbery. On the basis of these facts, we conclude that the defendant failed to demonstrate that the Faggaini report was material.

## B

The defendant further claims that the trial court improperly prohibited him from introducing the Faggaini report as a full exhibit under the residual or "catch-all" exception to the hearsay rule. We disagree.

After his motion for a mistrial based on the state's withholding the Faggaini report was denied, the defendant offered the report as a full exhibit under the residual exception to the hearsay rule. The trial court sustained the state's objection to its admission on the ground that the report was "more likely misleading than accurate" and that "there is absolutely nothing of any special trustworthiness . . . with this undated report . . . ."

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did. . . . *State* v. *Leonard*, 31 Conn. App. 178, 190, 623 A.2d 1052, cert. granted, 226 Conn. 912, 628 A.2d 985 (1993), appeal withdrawn January 7, 1994." (Internal quotation marks omitted.) *State* v. *Rogers*, 38 Conn. App. 777, 796, 664 A.2d 291 (1995), cert. denied, 235 Conn. 918, 665 A.2d 610 (1996).

"An out of court statement is hearsay when it is offered to establish the truth of the matters contained therein. . . . As a general rule, hearsay evidence is not admissible unless it falls under one of several well established exceptions. . . . The purpose behind the hearsay rule is to effectuate the policy of requiring that testimony be given in open court, under oath, and subject to cross-examination. . . . The residual, or catch-all, exception to the hearsay rule allows a trial court to admit hearsay evidence not admissible under any of the established exceptions if: (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions." (Citations omitted; internal quotation marks omitted.) *State* v. *Oquendo*, 223 Conn. 635, 664, 613 A.2d 1300 (1992).

In this case, the defendant claims that the statement met the necessity requirement because Faggaini died before the trial and he was the sole source of the information contained in his report. The defendant also

argues that the statement was reliable and trustworthy because it was an official police report filed by the lead investigator. We find these arguments to be meritless.

Although Faggaini indeed could not testify about the contents of his report, Hale, the hearsay declarant, was available and testified about her statement. The statements contained in the report were also fairly consistent with Hale's testimony at trial and in the search and seizure affidavit. The hearsay statement, therefore, was not reasonably necessary.

The trial court also found that the hearsay was misleading because, in the context of the entire report, the statement does not mean what it appears to say. Although Faggaini reported that Hale could not identify the gunman, he also reported that Hale recognized the gunman's rolled-up shirt sleeve and arm as that of the black male to whom she had given a job application minutes before. These statements are contradictory and render the report misleading and unreliable. We conclude that the trial court properly excluded the Faggaini report.

IV

We now address the defendant's claim that the trial court improperly admitted evidence of other crimes. The defendant asserts that this evidence was highly inflammatory and that it was more probable than not that the admission of this evidence affected the outcome of the trial. We disagree.

The following additional facts are necessary for the resolution of this issue. On the morning of August 7, 1987, the defendant walked into the Smith-Worthington Saddlery Company (Smith-Worthington), located on Homestead Avenue in Hartford, and held up Clinton Hanks at gunpoint. Hanks gave him $4, and the defendant shot him in the thigh. The defendant also made two

other people in the office lie on the floor while he took money from their wallets. Hanks identified the defendant as the assailant. The defendant entered a nolo contendere plea to that crime.

On August 7, 1987, at about 4 p.m., the defendant robbed Spillane's Service Station on Walnut Street in Hartford. The defendant entered the establishment with a bag and a gun and told Cheryl Spillane and Armando Rodriguez to lie down on the floor. The defendant demanded money and had Rodriguez empty the cash register and his wallet. The defendant also demanded that the victims open the safe. When neither Spillane nor Rodriguez could open it, the defendant kicked Spillane in the chest and in the eye, warned them both to stay on the floor, and fled. Five days later, Spillane identified the person depicted in the Hale composite as the robber. Rodriguez subsequently identified the defendant as the assailant from a photograph array and made an in-court identification of the defendant. The defendant pleaded guilty to that robbery.

On the morning of August 13, 1987, the defendant robbed Wilmer Woolford at Billington Realty on Albany Avenue in Hartford. The defendant told Woolford that he had a gun and demanded his wallet and money. He made Woolford lie on the floor. The defendant then asked whether there was a safe or any cash in the office. When he could not find more money, the defendant left the premises. He was later arrested for that robbery and entered a guilty plea.

The trial court found that the defendant had committed those other crimes and that the methods used in carrying out the crimes were so similar as to constitute a signature or a common scheme of criminal activity. The court also noted that the evidence of the Spillane's Service Station robbery was admissible to "explain . . . the composite," and the evidence of the Smith-

Worthington and Spillane's Service Station robberies was admissible to show that the defendant had access to the same gun used in the C & K robbery.[6] Although the court found "significant" prejudice to the defendant in the admission of this evidence, it found the probative value of the evidence to be "very high." It also found that the prejudice could be cured by cautionary instructions that forbade the jury to use the evidence to infer bad character or guilt by accumulation.[7]

"As a general rule, evidence of a defendant's prior crimes or misconduct is not admissible. . . . We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . [Prior misconduct] evidence may also be used to corroborate crucial prosecution testimony. . . . Moreover, we have held that such evidence may be used to complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings. . . .

"To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant . . . to at least one of the . . . exceptions. Second, the probative

---

[6] Witnesses of the Smith-Worthington and Spillane's Service Station robberies identified the gun used in the C & K robbery as the same gun or similar in appearance to the weapon used in the other two robberies.

[7] The trial court instructed the jury three times concerning the limited use of this evidence of other crimes, twice during testimony and once as part of its jury instruction. In its instruction, the court stated, "I charge you that evidence of a defendant's other misconduct or crimes is inadmissible to demonstrate the defendant's bad character or to suggest that the defendant has a propensity for criminal behavior. This evidence was admitted for you to determine whether or not these crimes bear a sufficiently high degree of similarity to the charged crimes for you to conclude that the charged crimes were part of a common scheme or system of criminal activity which included the uncharged crimes."

value of such evidence must outweigh the prejudicial effect of the other crime evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Cooper*, 227 Conn. 417, 424–25, 630 A.2d 1043 (1993). "[E]vidence is relevant if it has a tendency to establish the existence of a material fact. . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Wieler*, 35 Conn. App. 566, 576, 645 A.2d 1032 (1994), aff'd, 233 Conn. 552, 660 A.2d 740 (1995).

Under the first prong of our analysis, our examination of the proffered evidence reveals that the trial court properly admitted the evidence of the prior robbery convictions because the evidence was relevant to prove identity and to show a common scheme of criminal activity. "The first threshold for the use of evidence of other crimes or misconduct on the issue of identity is that the methods used be sufficiently unique to warrant a reasonable inference that the person who performed one misdeed also did the other." (Internal quotation marks omitted.) *State* v. *Crosby*, 196 Conn. 185, 190, 491 A.2d 1092 (1985). A comparison of the three uncharged crimes with the C & K robbery reveals the following similarities: (1) all four robbery locations are in close proximity; (2) all four crimes occurred within a six day period; (3) each robbery was a weekday, daylight robbery of a small business office at either the beginning or end of the day; (4) in each robbery, there was a lone perpetrator using a gun; (5) in each robbery, the gunman placed his weapon close to the victim and announced that it was a "stickup"; (6) in each robbery, there was an insistent search for money and wallets; (7) in three of the four robberies, the defendant fled on foot; and (8) the same gun was used in the Smith-Worthington, Spillane's Service Station and C & K robberies.

The defendant argues that the characteristics of these crimes are not sufficiently unique to warrant an excep-

tion to the general rule on the admissibility of other crimes evidence. We disagree.

"[T]he fact that some of the similarities between the offenses were legal or relatively common occurrences when standing alone does not, as the defendant argues, negate the uniqueness of the offenses when viewed as a whole. It is the distinctive combination of actions which forms the signature or modus operandi of the crime; *State* v. *Esposito*, [192 Conn. 166, 171–72, 471 A.2d 949 (1984)]; *State* v. *Braman*, [191 Conn. 670, 679, 469 A.2d 760 (1983)]; and it is this criminal logo which justifies the inference that the individual who committed the first offense also committed the second. *State* v. *Mandrell*, [199 Conn. 146, 151–52, 506 A.2d 100 (1986)]; *State* v. *Esposito*, supra, 171." (Internal quotation marks omitted.) *State* v. *Figueroa*, 235 Conn. 145, 164, 665 A.2d 63 (1995), quoting *State* v. *Morowitz*, 200 Conn. 440, 445, 512 A.2d 175 (1986). Under the facts and circumstances in this case, we conclude that the trial court did not abuse its discretion in admitting the other crimes evidence because the characteristics of the four robberies were sufficiently distinctive and unique to be "like a signature," and thus the defendant's commission of those robberies was highly probative on the issue of the identity of the C & K robber.[8]

Having determined that the trial court properly found the challenged evidence to be relevant, we must next review whether the court abused its discretion in weighing the probative value of the evidence against its prejudicial effect. *State* v. *Figueroa*, supra, 235 Conn. 166; *State* v. *Braman*, supra, 191 Conn. 676. "Relevant evidence of prior uncharged misconduct that is prejudicial in nature is admissible if the trial court, in the

---

[8] Because we conclude that the trial court properly admitted the evidence to prove identity or to show a common scheme, we need not address the trial court's finding that the evidence was also admissible to explain the composite or to show the defendant's access to the gun.

exercise of its sound discretion, determines that its probative value, for one or more of the purposes for which it is admissible, outweighs its prejudicial impact on the accused." (Internal quotation marks omitted.) *State* v. *Ortiz*, 40 Conn. App. 374, 380, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996).

"Because of the difficulties inherent in [the probative-prejudicial] balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." *State* v. *Howard*, 187 Conn. 681, 685, 447 A.2d 1167 (1982). The similarities between the robberies rendered the evidence highly probative. *State* v. *Figueroa*, supra, 235 Conn. 167. The trial court, however, was aware of the potential prejudicial effect of the evidence and carefully instructed the jury three times concerning the limited use for which the evidence was being admitted.[9] See id. Under these circumstances, we conclude that the trial court did not abuse its discretion in concluding that the probative value of the evidence exceeded its prejudicial effect. Accordingly, we conclude that there was no abuse of discretion in its decision to admit evidence concerning the other robberies.

V

In his final claim, the defendant argues that the trial court improperly denied his motion for judgment of acquittal because the state "failed to prove the essential element of identity." He contends that Hale's testimony was the only evidence identifying the defendant as the perpetrator and that it was legally insufficient. We disagree.

"When we are called on to review a sufficiency of the evidence claim, we impose a two part analysis. We first construe the evidence in the light most favorable

[9] See footnote 7.

to sustaining the verdict. *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993); *State* v. *Rivera*, 32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993); *State* v. *Hooks*, 30 Conn. App. 232, 238, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). We next determine whether, from that evidence and all the reasonable inferences that flow from the evidence, a trier of fact could reasonably find that the defendant was guilty beyond a reasonable doubt. . . .

"It is the sole right of the jury as the trier of the facts to draw all reasonable and logical inferences from the facts as it finds them to exist. . . . It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Thus, the issue of the identification of the defendant as the perpetrator of the crime is peculiarly an issue of fact to be resolved by the jury. . . .

"The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [trier of fact] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Reddick*, 33 Conn. App. 311, 332–33, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994).

Here, the jury had before it not only evidence of Hale's description of the gunman right after the crime occurred and her identification of the defendant and his voice during a lineup, it also had other evidence that corroborated Hale's testimony. The accuracy of Hale's description was supported by another witness who recognized and identified the defendant from the composite drawing. Furthermore, three witnesses testi-

fied that they spotted a black male matching the description given by Hale fleeing the area of C & K at the time of the robbery. Two of these three witnesses also identified the fleeing man as the defendant. The jury was also presented with evidence from which it could infer that the gun that was used to kill Shortell and Cannon during the C & K robbery was the same gun used by the defendant in two other robberies. Our review of the foregoing leads us to conclude that the jury could have reasonably concluded that the defendant was guilty of the crimes charged beyond a reasonable doubt. Thus, the evidence presented at trial was sufficient to convict the defendant.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] The defendant invites this court to replace our well established standard for evaluating claims of insufficient evidence with a less deferential standard espoused by federal Judge Jon Newman. See J. Newman, "Beyond 'Reasonable Doubt,' " 68 N.Y.U. L. Rev. 979 (1993). We decline to do so because "[w]hether our Supreme Court precedent should be reexamined, discarded or changed is not for this court to decide." *State* v. *Panella,* 43 Conn. App. 76, 83, 682 A.2d 532, cert. denied, 239 Conn. 937, 684 A.2d 710 (1996).