06-0238-ag
Wala v. Mukasey

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: May 4, 2007                                Decided: December 12, 2007
                                                     Amended: January 30, 2008)

Docket No. 06-0238-ag

_____

MARCIN WALA,

*Petitioner*,

– v. –

MICHAEL B. MUKASEY,* ATTORNEY GENERAL,

*Respondent*.

_____

Before:     CALABRESI, POOLER and SOTOMAYOR, *Circuit Judges*.

_____

Marcin Wala ("Wala") petitions for review of an order of the Board of Immigration
Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ") ordering him removed
on the grounds that his conviction for third-degree burglary, in violation of Conn. Gen. Stat.
section 53a-103, was a crime involving moral turpitude ("CIMT") within the meaning of 8
U.S.C. § 1182(a)(2)(A)(i)(I). We hold that although the IJ and BIA properly concluded that
Wala pled to a burglary with the intent to commit larceny, it was improper for the BIA to have
inferred from the plea colloquy that Wala intended a larceny offense involving a permanent,
rather than a temporary, taking of property for the purpose of determining whether Wala
committed a CIMT. We VACATE the BIA's removal order and REMAND for further
proceedings consistent with this opinion.

_____

*Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B.
Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as
respondent in this case.

1

Judge CALABRESI concurs in a separate opinion.

_____

JUSTIN CONLON (Michael Boyle, *on the brief*),
North Haven, Connecticut, *for petitioner*.

SANDRA S. GLOVER, Assistant United States
Attorney, (William J. Nardini, *on the brief*), *for*
Kevin J. O'Connor, United States Attorney for the
District of Connecticut, New Haven, Connecticut,
*for respondent*.

SOTOMAYOR, *Circuit Judge*:

Marcin Wala ("Wala") petitions for review of an order of the Board of Immigration

Appeals ("BIA") affirming the decision of Immigration Judge ("IJ") Michael Straus ordering

him removed on the grounds that his conviction for third-degree burglary, in violation of

Connecticut General Statutes section 53a-103 (the "burglary statute"), was a crime involving

moral turpitude ("CIMT") within the meaning of 8 U.S.C. § 1182(a)(2)(A)(i)(I). *In re Marcin*

*Wala*, No. A44 514 700 (B.I.A. Dec. 27, 2005), *aff'g* No. A44 514 700 (Immig. Ct. Hartford,

Conn. Aug. 4, 2004). We hold that although the IJ and BIA properly concluded that Wala pled

to a burglary with the intent to commit larceny, it was improper for the BIA to have inferred

from the plea colloquy that Wala intended a larceny offense involving a permanent, rather than a

temporary, taking of property for the purpose of determining whether Wala committed a CIMT.

We VACATE the BIA's removal order and REMAND for further proceedings consistent with

this opinion.

## BACKGROUND

### I. The Criminal Conviction

Wala, a citizen of Poland, was admitted to the United States in 1994 as a lawful

2

permanent resident. On August 7, 2002, Wala pled guilty in the Superior Court of Fairfield, Connecticut to two counts of burglary in the third degree, in violation of Conn. Gen. Stat. section 53a-103, and one count of failure to appear in the first degree, in violation of section 53a-172.[1] Wala was also charged with two counts of larceny and one count of credit card theft arising from the same incident, but the prosecutor entered a *nolle prosequi* for those charges. During Wala's plea colloquy, the prosecutor recited the following factual basis for the plea:

> On July 8, 2001 someone reported to the Greenwich Police Department that while that person was away on vacation from June 30, 2001 to July 7, 2001 people entered her home and stole cash and jewelry, as well as a credit card. Police investigated and the owner had workers at her house. This defendant was one of the two workers. The Police spoke to the defendant's co-worker and the defendant admitted that on two occasions they went into the victim's house and took items from the victim's house. The first time they took two rings. The second time they took official jewelry and the next time a first union credit card and two watches. The co-defendant said that this defendant, the co-defendant, and a third person committed those crimes.

The state judge then questioned Wala about the voluntariness of his plea and his satisfaction with his lawyer's advice. The judge also informed Wala of the rights he would forfeit as a result of his admission of guilt. The following exchange occurred:

> THE COURT: . . . The State's Attorney related certain facts, which he alleged occurred. Is that what you did? Is that what you are guilty of?
> MR. WALA: Yes sir.
> THE COURT: Pleading guilty because you are guilty?
> MR. WALA: Yes sir.

The judge further advised Wala of the possible immigration consequences of his plea and, pursuant to the terms of the plea agreement, imposed concurrent suspended sentences of five years of imprisonment and three years of probation for all counts of the conviction.

---

[1] Wala was charged with violating Connecticut General Statutes section 53a-172, "Failure to appear in the first degree," as a result of his failure to appear in court on July 20, 2002, while on bail, to answer the criminal charges arising from the burglary incident.

3

## II. Immigration Proceedings

Wala was served with a Notice to Appear ("NTA") on July 7, 2003. The NTA alleged, *inter alia*, that Wala applied for admission as a returning lawful permanent resident at Newark Airport on June 13, 2003, and that he had previously been convicted of two counts of third-degree burglary under Connecticut law. The NTA charged Wala with removability under 8 U.S.C. § 1182(a)(2)(A)(i)(I), which authorizes the removal of "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude."

In January 2004, Wala submitted a written motion to terminate his removal proceedings on the ground that his convictions did not qualify as CIMTs. In a decision dated August 4, 2004, the IJ denied Wala's motion and ordered him removed on the basis of his burglary convictions. The IJ held that the burglary statute is divisible because it criminalizes offenses that may or may not be considered CIMTs. On the basis of this divisibility finding, the IJ consulted Wala's record of conviction to determine the underlying crime Wala intended to commit when he entered the victim's house, and concluded that Wala intended to commit larceny, which the IJ found to be a CIMT. Having found Wala removable on this basis, the IJ declined to reach the question of whether Wala's conviction for failure to appear in state court independently qualified as a removable offense.

Wala timely appealed the IJ's decision to the BIA, which affirmed the IJ's decision, stating:

> Based upon our review of the record, we find that the factual findings of the Immigration Judge are not clearly erroneous and we adopt and affirm the thorough and well-reasoned decision of the Immigration Judge. *Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994) (noting that adoption or affirmance

4

of a decision of an Immigration Judge, in whole or in part, is "simply a statement that the Board's conclusions upon review of the record coincide with those which the Immigration Judge articulated in his or her decision"); *see generally* 8 C.F.R. § 1003.1(d)(3)(i) (stating that the Board shall review factual determinations, including credibility findings, "only to determine whether the findings of the Immigration Judge are clearly erroneous"). In particular, we concur in the Immigration Judge's finding [that] the underlying crime of larceny involved in the burglary conviction is a crime involving moral turpitude. The plea transcript is adequate to show that such offense involved a permanent taking of property.

Wala timely petitioned this Court for review of the BIA's decision.

## DISCUSSION

Wala was deemed removable for having been convicted of a CIMT based on his guilty plea to two counts of burglary in the third degree, in violation of Conn. Gen. Stat. section 53a-103, which provides in pertinent part: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein." Wala contends that he was not convicted of a CIMT because he was not charged with, and he did not otherwise admit to, an intent permanently to deprive the victim of her property. He further argues that the BIA erred insofar as it inferred from his plea colloquy transcript that he intended a permanent taking. We agree and hold that the crime Wala pled to does not constitute a CIMT.

### I. Jurisdiction and Standard of Review

Ordinarily, this Court lacks jurisdiction to review orders of removal based on an alien's conviction for certain offenses, including CIMTs. *See* 8 U.S.C. § 1252(a)(2)(C). We retain jurisdiction, however, to consider "questions of law," 8 U.S.C. § 1252(a)(2)(D), including whether an alien's conviction qualifies as a removable offense under the immigration laws. *See* *Mizrahi v. Gonzales*, 492 F.3d 156, 157-58 (2d Cir. 2007); *Blake v. Gonzales*, 481 F.3d 152, 155-56 (2d Cir. 2007).

5

Where, as here, the BIA adopts the IJ's reasoning and offers additional commentary, we review the decision of the IJ as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We accord *Chevron* deference to the BIA's construction of ambiguous statutory terms in immigration law, such as "moral turpitude." *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984); *see also Michel v. INS*, 206 F.3d 253, 262-65 (2d Cir. 2000) (deferring to the BIA's rule that crimes for which knowledge is an element are generally CIMTs). "However, as we recognized in *Michel*, 206 F.3d at 262, the BIA has no expertise in construing . . . state *criminal* statutes, and so we review *de novo* the BIA's finding that a petitioner's crime of conviction *contains* those elements which have been properly found to constitute a CIMT." *Gill v. INS*, 420 F.3d 82, 89 (2d Cir. 2005). Thus, in this case, we defer to the BIA's view that larceny involving a permanent taking amounts to a CIMT, but we review *de novo* whether Wala's conviction for third-degree burglary under Connecticut law falls within this category.

## II. Wala's Alleged CIMT

With these principles in mind, we turn to whether Wala's conviction for burglary in the third degree was a CIMT such that he was removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I).

### A. Definition of a CIMT

An alien is removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) if he has been "convicted of, or . . . admits having committed, or . . . admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude." Traditionally, the BIA has defined a CIMT as "conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in

6

general." *Rodriguez v. Gonzales*, 451 F.3d 60, 63 (2d Cir. 2006) (internal quotation marks omitted); *see also In re M–*, 2 I. & N. Dec. 721, 723 (B.I.A. 1946). The BIA has held that burglary offenses "may or may not involve moral turpitude, the determinative factor being whether the crime intended to be committed at the time of entry or prior to the breaking out involves moral turpitude." *In re M–*, 2 I. & N. Dec. at 723. Thus, Wala's conviction under the burglary statute constitutes a CIMT only if the crime he intended to commit upon entry into the victim's house is itself a CIMT. There is no serious dispute here that the underlying crime Wala intended to commit was larceny.[2] Under BIA precedent, however, not all larcenies are CIMTs. The BIA has held that "[o]rdinarily, a conviction for theft is considered to involve moral turpitude only when a permanent taking is intended." *Matter of Grazley*, 14 I. & N. Dec. 330, 333 (B.I.A. 1973); *see also In re R–*, 2 I. & N. Dec. 819, 828 (B.I.A. 1947) ("It is settled law that the offense of taking property temporarily does not involve moral turpitude.").

We recognize that in some cases the BIA has stated that larceny is a CIMT without distinguishing between a permanent and a temporary taking. *See, e.g.*, *In re Westman*, 17 I. & N. Dec. 50, 51 (BIA 1979) (citing cases supporting this proposition). We also note that the BIA has recently suggested that whether this distinction actually exists is an open question. *See In re Jurado-Delgado*, 24 I. & N. Dec. 29, 33 (BIA 2006). In this case, however, the BIA's order, insofar as it departed from the IJ's holding, expressly referenced Wala's alleged permanent taking, making it clear that the BIA treated the inquiry as determinative of whether Wala

---

[2] Wala argues that although he took items from the victim's house, this does not mean that he entered with the intent to commit a larceny. Under Connecticut law, however, the government need not prove Wala's intent when he entered the building if it can establish the intent formed when he remained. Conn. Gen. Stat. § 53a-103.

7

committed a removable offense. Under the *Chenery* doctrine, our review is limited to "[t]he grounds upon which . . . the record discloses that [the agency's] action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943). Thus, we need not consider the government's contention that burglaries involving any kind of larceny are CIMTs for purposes of removal. Nevertheless, we acknowledge that the BIA is free to reconsider its view of what types of larcenies amount to CIMTs, and we express no position here on whether any such change in position would be entitled to or receive deference.

When deciding whether a larceny is committed with the intention of a permanent taking, the BIA has looked to the nature of the statute, *see, e.g.*, *In re M–*, 2 I. & N. Dec. at 723 (analyzing third-degree burglary statute in New York), and in some cases "look[ed] beyond the statute to consider such facts as may appear from the record of conviction or admissions of the alien to reach an independent conclusion as to whether the offense is one which, under [the BIA's] law, involves moral turpitude," *In re F–*, 2 I. & N. Dec. 517, 519-20 (B.I.A. 1946). In the latter instance, when it is clear from the record of conviction that certain types of takings are involved, the BIA has assumed or presumed that the taking was intended to be permanent for purposes of determining removability. *See, e.g.*, *Matter of Grazley*, 14 I. & N. Dec. at 333 (taking of cash); *In re G–*, 2 I. & N. Dec. 235, 237-38 (B.I.A. 1945) (taking of goods for resale); *In re Jurado-Delgado*, 24 I. & N. Dec. at 29, 33 (retail theft).

### B. Relevant Connecticut Statutes

Wala argues that his conviction does not constitute a CIMT because the crime to which he pled guilty does not necessarily involve the intent to take permanently the victim's property, and he did not admit any such intent in his plea colloquy. Before reaching the question of

8

whether Wala necessarily pled guilty to an offense constituting a CIMT, we briefly review the statute under which Wala was convicted.

The burglary statute to which Wala pled guilty makes it a crime to enter or remain unlawfully in a building with the intent to commit any type of crime therein. Conn. Gen. Stat. § 53a-103; *see also State v. Little*, 485 A.2d 913, 918 (Conn. 1984). As noted above, there is no dispute that the object crime to which Wala pled guilty was larceny. In Connecticut, "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." Conn. Gen. Stat. § 53a-119. This larceny statute, however, does not distinguish between permanent or temporary takings; both are culpable acts. *See State v. Wieler*, 660 A.2d 740, 741-42 (Conn. 1995) (holding that taking property without the intent to deprive permanently its owner thereof can sustain a conviction under the larceny statute). Thus, we address whether, by admitting to third-degree burglary with the intent to commit larceny, Wala is removable for having committed a CIMT.

### C. Categorical and Modified Categorical Approaches

In general, the BIA and this Court have applied either a "categorical" or a "modified categorical" approach to determine whether a specific crime falls within a grounds for removability. *See, e.g.*, *Gill*, 420 F.3d at 89-91 (applying the categorical approach); *Dickson v. Ashcroft*, 346 F.3d 44, 48-49 (2d Cir. 2003) (applying the modified categorical approach). Under the categorical approach, a reviewing court "look[s] to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime." *Canada v. Gonzales*, 448 F.3d 560, 565 (2d Cir. 2006) (internal quotation marks omitted); *see also*

9

*Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001).  This approach requires a court to "focus on the intrinsic nature of the offense, rather than on the singular circumstances of an individual petitioner's crimes, and only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant."  *Vargas-Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 166 (2d Cir. 2006) (internal quotation marks and alterations omitted).  In describing the categorical approach, we have held that "every set of facts violating a statute must satisfy the criteria for removability in order for a crime to amount to a removable offense; the BIA may not justify removal based on the particular set of facts underlying an alien's criminal conviction."  *Dickson*, 346 F.3d at 48.

Under the modified categorical approach, however, a limited review of a petitioner's circumstances may be warranted where a statute of conviction is "divisible."  *See Vargas-Sarmiento*, 448 F.3d at 167.   A statute is divisible if it "encompasses multiple categories of offense conduct, some, but not all, of which would categorically constitute" a removable offense. *Id.*; *see also Dickson*, 346 F.3d at 48 ("Where . . . a criminal statute encompasses diverse classes of criminal acts—some of which would categorically be grounds for removal and others of which would not—we have held that such statutes can be considered 'divisible' statutes.").   In reviewing a conviction under a divisible statute, we may refer to the "record of conviction" to ascertain whether a petitioner's conviction was under the branch of the statute that proscribes removable offenses.  *Id.* at 48-49; *see also Chrzanoski v. Ashcroft*, 327 F.3d 188, 193 n.8 (2d Cir. 2003).  The record of conviction includes, *inter alia*, "the charging document, a plea agreement, a verdict or judgment of conviction, a record of the sentence, or a plea colloquy transcript." *Dickson*, 346 F.3d at 53.

In *Dulal-Whiteway v. U.S. Dep't of Homeland Sec.*, 501 F.3d 116 (2d Cir. 2007), we recently discussed the parameters of the modified categorical approach as applied to guilty pleas. We relied in part on the Supreme Court's decision in *Shepard v. United States*, 544 U.S. 13, 16 (2005), in which the Court addressed whether a burglary conviction in a state whose law defined "burglary" more broadly than the "generic" definition of burglary was based on facts that could support a conviction for "generic" burglary.[3] The state burglary statute at issue in *Shepard* expanded the generic burglary offense of breaking and entering into a building or an enclosed space by including the breaking and entering into a car or a boat. *Id.* at 17. The Court explained that with "a transcript of plea colloquy or by written plea agreement presented to the court [entering the judgment of conviction], or by a record of comparable findings of fact adopted by the defendant upon entering the plea[,] . . . a later court [determining the sentence] could generally tell whether the plea had 'necessarily' rested on the fact identifying the burglary as generic," i.e., the breaking into a building. *Id.* at 20-21 (quoting *Taylor*, 495 U.S. at 602).

In *Dulal-Whiteway*, we applied the Court's reasoning in *Shepard* to the removal context, explaining that, for convictions following a plea, the BIA may rely only upon facts to which a defendant "necessarily pleaded" in order to determine the type of conduct that represented the basis of an alien's conviction. 501 F.3d at 131. To the extent our decision in *Dulal-Whiteway* relies on *Shepard*, the "necessarily pleaded" language refers not just to whether a petitioner pled

---

[3]Although the Supreme Court in *Shepard* was also addressing a question left open by its previous decision in *Taylor v. United States*, 495 U.S. 575 (1990)—that is, what materials a district court may consider when determining whether a defendant's offense of conviction following a guilty plea qualifies as a "violent felony" for purposes of the Armed Career Criminal Act—we focus here only on the Court's analysis concerning a sentencing court's ability to make inferences from the record of conviction.

11

guilty to elements of the underlying state offense, but also to whether by pleading guilty, he pled those facts necessary to establish that he violated a divisible statute in a manner that satisfies the grounds for the removability provision at issue—the equivalent of the "generic" burglary offense in *Shepard*. Thus, a petitioner necessarily pleads to facts when, for example, he actually admits specific facts in his plea colloquy or comparable judicial record that establish he violated a divisible statute in manner that satisfies the criteria of the pertinent removability statute. Further, if the petitioner is charged with violating a divisible state statute in manner that satisfies the elements of the pertinent removability statute and he pleads guilty, he has "necessarily pleaded" to an offense for which he is removable. In *Dulal-Whiteway*, we assumed—based on the petitioner's failure to challenge the divisibility of the statute of conviction—that the statute was divisible. *Id.* at 128. However, we held that a restitution order did not establish that the petitioner "necessarily pleaded" to an offense that would justify application of the pertinent removal statute because, *inter alia*, the petitioner did not admit these facts and was not convicted of them. *Id.* at 129-34.

### D. The BIA's Error

Although we have not yet had occasion to determine whether Conn. Gen. Stat. section 53a-103 is divisible, both parties, as well as the IJ and BIA, have adopted the position that the statute is divisible on the grounds that it encompasses offenses that "may or may not involve moral turpitude," *In re M–*, 2 I. & N. Dec. at 723. We thus assume for purposes of this case that the statute is divisible and proceed under the modified categorical approach to examine whether Wala's record of conviction necessarily admits facts establishing the elements of a CIMT. More specifically, because the BIA held in this case that the intent of a permanent taking was

12

necessary to sustain the removability charge, the issue is whether Wala's record of conviction necessarily supports this result. We hold that it does not, and that the BIA erred in deeming Wala removable.

In his plea colloquy, Wala admitted to taking "two rings," "official jewelry," "a first union credit card," and "two watches" from the victim's home.[4] In so doing, Wala "actually admitted," *Dulal-Whiteway*, 501 F.3d at 125, to facts establishing that he was convicted of a burglary with the intent to commit a larceny. Wala did not admit, however, to taking these items with the intent to appropriate them permanently. Wala, moreover, was not charged with committing a permanent taking; the charging document does not specifically name the intended crime associated with his burglary conviction and the prosecutor entered a *nolle prosequi* for two charges of larceny and one charge of credit card theft. Finally, as described *supra*, to be convicted of larceny in Connecticut, the statute requires only an "intent to deprive another of property or to appropriate the same to himself or a third person," Conn. Gen. Stat. § 53a-119, without regard to whether the taking was permanent or temporary. However improbable, Wala could have been taking the jewelry with the intent to loan it to his girlfriend for one "night on the town" and then return it. Or, he could have been taking the credit cards with the intent to use them for a one-time identification purpose. The point is that either would have been sufficient to sustain Wala's guilty plea and conviction under Connecticut penal law.

---

[4]Although the government suggests that Wala admitted to taking cash among the stolen items, the portion of the plea colloquy that supports this proposition is based upon the victim's police report rather than Wala's own admissions. Wala admitted only to the taking of rings, official jewelry, a first union credit card, and two watches. We therefore do not consider in this opinion whether the taking of cash would yield the same result here. *Cf. Matter of Grazley*, 14 I. & N. Dec. at 333 (holding that the taking of cash is assumed to be permanent).

Thus, although it may have been reasonable for the BIA to infer that Wala intended permanently to keep the items he admitted taking, the modified categorical approach does not permit the BIA to draw inferences of this kind. We have held that the BIA cannot adjudicate the facts in a criminal case to determine whether, standing alone, they suggest that the petitioner committed a removable offense. *See Sui v. INS*, 250 F.3d 105, 119 (2d Cir. 2001) (emphasizing that the BIA cannot assume the position of factfinder). Because Wala did not admit to, was not charged with, and was not required to plead to a permanent taking in order to be convicted in Connecticut of burglary in the third degree, Wala's guilty plea does not necessarily rest on facts identifying the burglary as a CIMT. *See Dulal-Whiteway*, 501 F.3d at 129-31. As the Supreme Court explained in *Shepard*, if the state statute requires no finding of the particular element at issue and there is no charging document that narrows the charge to those limits, the "only certainty [in a pleaded case] of [that] finding lies in . . . the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea." *Shepard*, 544 U.S. at 25. In Wala's case, the record is silent on the removability element, that is, whether he intended to commit a permanent taking. The BIA, by looking to the facts of Wala's conviction to infer such an intent, therefore transgressed the permitted scope of the modified categorical approach. Accordingly, the BIA erred in finding Wala removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I).

## CONCLUSION

For the foregoing reasons, we hold that (1) it was proper for the IJ and BIA to conclude that Wala pled guilty to a burglary with the intent to commit larceny, but (2) the BIA erred in finding Wala removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because it improperly inferred from Wala's record of conviction that he intended to take property permanently, rather than

14

temporarily.  Wala was not required to plead facts establishing that he intended to commit a permanent taking, and there is no statement in Wala's plea colloquy admitting an intent to commit a permanent taking.  Wala's guilty plea, therefore, did not necessarily admit the elements of a CIMT.  We VACATE the BIA's removal order and REMAND for further proceedings consistent with this opinion.

GUIDO CALABRESI, *Circuit Judge*, concurring.

I concur completely with the reasoning of the Court and with its application to this case. I write separately simply to say that this case seems to me to demonstrate the severe problems that adhere to the categorical approach and to the modified categorical approach. The law of the Circuit is clear, however, and we are bound to these approaches. *See Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 327 (2d Cir. 2004). That being so, I join the opinion of the Court *in toto*.