# United States Court of Appeals
## For the First Circuit

No. 17-1310

DOMINGO ANTONIO ROSA PENA,

Petitioner,

v.

JEFFERSON B. SESSIONS, III,
ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, <u>Chief Judge</u>,
Lynch and Thompson, <u>Circuit Judges</u>.

<u>Jeffrey B. Rubin</u> and <u>Rubin Pomerleau P.C.</u> for petitioner.
<u>Margot L. Carter</u>, Trial Attorney, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice, with whom
<u>Chad A. Readler</u>, Acting Assistant Attorney General, and <u>Terri J.
Scadron</u>, Assistant Director, Office of Immigration Litigation,
were on brief, for respondent.

February 14, 2018

**LYNCH, Circuit Judge.** This petition for review presents the question of whether the Board of Immigration Appeals' ("BIA") decision is sustainable on the reasoning it used to conclude that a violation of Mass. Gen. Laws ch. 266, § 2 ("Massachusetts Arson") is categorically a crime involving moral turpitude ("CIMT") under the Immigration and Nationality Act ("INA"), Pub. L. No. 82-414, 66 Stat. 163 (1952) (codified as amended in scattered sections of 8 U.S.C.). The consequence of this BIA ruling is that petitioner Domingo Antonio Rosa Pena ("Rosa") is removable. We remand to the BIA due to its insufficient explanation of why the least culpable conduct prohibited under the statute is morally reprehensible, and why the statute's requirement of "malice," as construed by the Massachusetts courts, qualifies the crime as a CIMT.

I.

Rosa, a native and citizen of the Dominican Republic, entered the United States in 1972 as a lawful permanent resident. His wife and four children, all U.S. citizens, reside in the United States. In 2001, Rosa was convicted of the crime of Massachusetts Arson[1] for burning down his grocery store. When Rosa returned from a trip abroad in September 2013 and sought admission to the United

---

[1] For ease of reference, we use the term "Massachusetts Arson" to refer specifically to Mass. Gen. Laws ch. 266, § 2. There are other Massachusetts arson statutes. See, e.g., Mass. Gen. Laws ch. 266, §§ 1, 5, 7-9. They are not at issue in this petition.

States, the Department of Homeland Security ("DHS") detained him[2] and initiated removal proceedings against him based on that conviction. DHS charged that Rosa was removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) on the basis that his conviction for Massachusetts Arson qualified as a CIMT. In a motion to terminate the removal proceedings, Rosa denied his removability and, in the alternative, requested several forms of relief: cancellation of removal under 8 U.S.C. § 1229b(a), adjustment of status with a waiver of inadmissibility under 8 U.S.C. § 1182(h), or voluntary departure.

The Immigration Judge ("IJ") denied Rosa's motion on November 7, 2013. The IJ found the Massachusetts Arson statute divisible, in that it punishes not only "conduct that would fall within the generic definition of arson" but also "conduct that may not be deemed reprehensible . . . , such as an owner setting fire to some of the contents in his building." Applying a modified categorical approach, the IJ reviewed Rosa's record of conviction and concluded that his actual crime, "willfully and maliciously setting fire to and burning a building," was categorically a CIMT. The IJ also found Rosa ineligible for relief from removal on the

---

[2]     It appears that Rosa was initially detained at that time and was released from detention after this court granted him a stay of removal when we allowed the government's motion to remand to the BIA, in December 2014.

basis that he failed to prove that his conviction was not an aggravated felony.

The BIA dismissed Rosa's appeal in an opinion dated March 21, 2014, which replicated the IJ's reasoning. The BIA agreed with the IJ that the Massachusetts Arson statute was divisible "in that it also includes conduct that may not be deemed morally reprehensible, . . . such as an owner setting fire to the contents in his buildings." The BIA also agreed that Rosa's actual crime qualified as a CIMT, rendering Rosa removable, and as an aggravated felony, rendering him ineligible for relief from removal.

Rosa petitioned this court for review; however, the respondent filed an unopposed motion to remand for the BIA to consider what effect (if any) its intervening decision in Matter of Chairez-Castrejon, 26 I. & N. Dec. 349 (B.I.A. 2014) had on its analysis of the Massachusetts Arson statute's divisibility. This court granted the motion. On remand, the BIA examined Rosa's conviction anew in light of its most recent case law, Matter of Chairez-Castrejon, 26 I. & N. Dec. 819 (B.I.A. 2016) and Matter of Silva-Trevino, 26 I. & N. Dec. 826 (B.I.A. 2016). That opinion, dated February 27, 2017, is the subject of this petition.

The BIA did not address the Massachusetts Arson statute's divisibility, but rather concluded, "the conviction is categorically a crime involving moral turpitude." The BIA listed the statute's elements -- willfully and maliciously burning a

building or structure or contents thereof -- and noted that under Massachusetts law, "malice" means "willfully engag[ing] in an unlawful act," citing Commonwealth v. McLaughlin, 729 N.E.2d 252, 259 (Mass. 2000). It then found controlling its precedent in Matter of S, 3 I. & N. Dec. 617 (B.I.A. 1949), which held that a violation of a Canadian statute that prohibited "willfully attempt[ing] to set fire to" a building, structure, or certain other combustible materials was categorically a CIMT. Id. at 618. For further support, the BIA also referred to the Eleventh Circuit's non-binding but "relevant" holding in Vuksanovic v. U.S. Att'y Gen., 439 F.3d 1308 (11th Cir. 2006) that Florida second-degree arson is a CIMT because "the willful destruction of a structure by fire or by explosion without a lawful, legitimate purpose . . . evinces a certain baseness in the private and social duties a man owes to society." Id. at 1311. Finally, the BIA reiterated that Rosa's conviction, in addition to being a CIMT, was an aggravated felony that rendered him ineligible for relief

from removal.  This petition for review followed.  The parties agree here that the Massachusetts Arson statute is indivisible.[3]

II.

The government first argues that we lack jurisdiction over this petition because Rosa is removable as a result of his commission of a CIMT.  See 8 U.S.C. § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2). . . ."). We reject this argument because Rosa's petition presents a legal issue: whether the BIA erred in concluding that Massachusetts Arson is categorically a CIMT.  See 8 U.S.C. § 1252(a)(2)(D).

"Where, as here, 'the BIA has rendered a decision with its own analysis of the question at issue, our review focuses on the BIA's decision, not the IJ's.'"  Patel v. Holder, 707 F.3d 77, 79 (1st Cir. 2013) (quoting Vásquez v. Holder, 635 F.3d 563, 565 (1st Cir. 2011)).  Two standards of review apply.  "We review the BIA's legal conclusions de novo, but we afford Chevron deference to the BIA's interpretation of the [INA], including its determination that a particular crime qualifies as one of moral

---

[3]    In his petition, Rosa does not challenge the BIA's finding that his crime qualifies as an aggravated felony.  Nor has the government suggested in its responsive brief that the aggravated felony finding may render moot the CIMT determination. We do not address any such possible issues.

- 6 -

turpitude, unless that interpretation is 'arbitrary, capricious, or clearly contrary to law.'" Coelho v. Sessions, 864 F.3d 56, 60 (1st Cir. 2017) (quoting Da Silva Neto v. Holder, 680 F.3d 25, 28 (1st Cir. 2012)). In this case, we give deference to the BIA's construction of the term "moral turpitude," but not to its reading of the underlying criminal statutes at issue, "as to which it has no expertise." Id. at 61 (quoting Patel, 707 F.3d at 79). Generally, "our review is limited to the reasoning articulated below." Patel, 707 F.3d at 80 n.1. Neither the government nor this court is at liberty to fill gaps and remedy material deficiencies in the BIA's analysis. See Mejia v. Holder, 756 F.3d 64, 69 (1st Cir. 2014).

The INA does not define "moral turpitude." Absent guidance from Congress, we have adopted the BIA's definition:

> "conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general," or, in other words, "an act which is per se morally reprehensible and intrinsically wrong" and is "accompanied by a vicious motive or a corrupt mind."

Da Silva Neto, 680 F.3d at 29 (quoting Maghsoudi v. INS, 181 F.3d 8, 14 (1st Cir. 1999)).

Importantly, to ascertain whether a crime categorically involves moral turpitude, the focus must be on the "'least of th[e] acts' criminalized" under the statute. Coelho, 864 F.3d at 61 n.1

- 7 -

(quoting Moncrieffe v. Holder, 569 U.S. 184, 191 (2013)). "'[T]he particular circumstances of [the petitioner's] acts and convictions' are off-limits." Da Silva Neto, 680 F.3d at 31 (quoting Maghsoudi, 181 F.3d at 14).

In its post-remand opinion, the BIA concluded, relying on Matter of S, that Massachusetts Arson is categorically a CIMT. The BIA's opinion must be remanded because it provides inadequate reasoning on two points. First, both the IJ and the BIA in its pre-remand decision opined that the Massachusetts Arson statute reaches "conduct that may not be deemed morally reprehensible, . . . such as an owner setting fire to the contents in his building." The BIA has not addressed the moral reprehensibility of the least culpable conduct criminalized under the statute, an issue which it had recognized in its first opinion. It does not articulate what it is about the least culpable conduct covered by the statute that is "per se morally reprehensible and intrinsically wrong," nor does it explicate why such behavior necessarily evinces a "vicious motive or a corrupt mind," as required for a finding of moral turpitude. Da Silva Neto, 680 F.3d at 29.[4]

Second, the BIA has not adequately discussed the specialized meaning of "malice" under the Massachusetts Arson

---

[4] The government argues in its brief that deliberately burning property unlawfully is intrinsically reprehensible conduct because of its inherent dangerousness and unpredictable

- 8 -

statute, or why Matter of S is dispositive in light of that term's definition.[5]  Matter of S held that attempted arson under a Canadian statute is categorically a CIMT.  3 I. & N. Dec. at 618.  The BIA asserts that that Canadian statute describes "the same basic elements and the same level of intent" as the Massachusetts Arson statute.  But the two statutes' scienter requirements differ,[6] as the government correctly conceded at oral argument.  The Canadian statute requires acting "willfully," defined as "not merely . . . voluntarily" but "purposely with an evil intention, or, in other words, . . . deliberately, intentionally, and corruptly, and without any justifiable excuse."  Id. at 618 (quoting R. v. Duggan, 4 W.L.R. 481, 490 (1906)).  The Massachusetts Arson statute requires acting "willfully and maliciously."  For that statute's

_____

consequences: fire can spread to non-targeted property, and, in cases where a burning building is occupied, there is a risk of deadly harm to occupants as well as to firefighters.  This argument may be potent, but the BIA did not make it.  The BIA's CIMT determination must be upheld, if at all, on the basis articulated in the decision itself.  See Mejia, 756 F.3d at 69.

   [5]    The other case cited by the BIA, Vuksanovic, does not bind the BIA in this circuit.  Moreover, we note that the Eleventh Circuit reached its conclusion -- that arson "evinces a certain baseness," Vuksanovic, 439 F.3d at 1311 -- under Florida law, without engaging in the type of analysis that the Massachusetts statute at issue here requires.

   [6]    The Canadian arson statute also differs from its Massachusetts counterpart in that, rather than prohibit burning any property, it specifically targets setting fire to combustible substances that one would expect to cause widespread damage. Matter of S, 3 I. & N. Dec. at 617-18.

purposes, the Massachusetts Supreme Judicial Court has construed "willful" to mean intentional as opposed to accidental, without requiring evil intent, ill will, or malevolence, see Commonwealth v. Dung Van Tran, 972 N.E.2d 1, 15-16 (Mass. 2012), and it has construed "malice" to require no more than "[t]he wilful doing of an unlawful act without excuse."  Id. at 15 (quoting McLaughlin, 729 N.E.2d at 259 n.6); see also Commonwealth v. Lamothe, 179 N.E.2d 245, 246 (Mass. 1961) ("The malice which is a necessary element in the crime of arson . . . need not take the form of malevolence or ill will, but it is sufficient if one deliberately and without justification or excuse sets out to burn the dwelling house of another.").

That the Massachusetts Arson statute requires neither "evil intent" nor a "corrupt" mindset[7] may be significant for the CIMT determination.  In Da Silva Neto, this court upheld the BIA's conclusion that Massachusetts "malicious destruction of property" is a CIMT, emphasizing that the statute required "an act 'by design hostile to the owner . . . of the property,' meaning . . . motivated by 'cruelty, hostility, or revenge' toward an individual, not just an inanimate object."  680 F.3d at 32 (quoting Commonwealth v. Morris M., 876 N.E.2d 462, 466 (Mass. App. Ct. 2007)).  Da Silva

---

[7]    The government conceded at oral argument that the Massachusetts Arson statute, unlike its counterpart in Matter of S, does not require the perpetrator to act with a "corrupt mind."

- 10 -

Neto acknowledged the Ninth Circuit's holding in <u>Rodriguez-Herrera</u> v. <u>INS</u>, 52 F.3d 238 (9th Cir. 1995) that Washington second-degree malicious mischief -- "knowingly and maliciously . . . [c]aus[ing] physical damage to the property of another" -- is not a CIMT.  <u>Id.</u> at 239-40 (quoting Wash. Rev. Code Ann. § 9A.48.080(1)(a)).  But <u>Da Silva Neto</u> distinguished <u>Rodriguez-Herrera</u> on the basis that malice under the malicious mischief statute "could . . . 'be inferred if the act [was] merely wrongfully done without just cause or excuse,'" whereas malice under the malicious destruction of property statute entailed, "[i]n addition to the intent to inflict injury to property, . . . a state of mind infused with cruelty, hostility or revenge."  <u>Id.</u> at 30 n.8 (quoting <u>Commonwealth</u> v. <u>Redmond</u>, 757 N.E.2d 249, 252 (Mass. App. Ct. 2001)).  <u>Da Silva Neto</u>'s reasoning suggests that, absent "fraud" or a "risk of physical harm to another person," ill will is at least relevant, and may perhaps be critical, to a finding of moral turpitude.  <u>Id.</u> at 32.  For these reasons, we remand this case to the BIA.

### III.

We <u>grant</u> the petition for review, <u>vacate</u> the BIA's February 27, 2017 opinion, and <u>remand</u> for further proceedings consistent with our opinion.